**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**LINCOLN BENEFIT LIFE COMPANY, ET AL.**

**VERSUS**

**KIM THOMAS KELLY, ET AL**

**CIVIL ACTION**

**NUMBER 10-823-DLD**

**ORDER**

This interpleader action is before the court on plaintiffs' motion for attorney's fees and costs (rec. doc. 35). Plaintiffs seek reimbursement of $7,453.50 in attorney's fees and $389.79 in cost incurred in connection with filing this action (rec. doc. 35, Exhibit 2). The motion is opposed (rec. doc. 37).

**Background**

Plaintiffs, Lincoln Benefit Life Company ( Lincoln) , Allstate Life Insurance Company (Allstate)[1], and American Heritage Life Insurance Company (American Heritage) (collectively referred to as "Insurers"), issued various annuity policies to the decedent Woodrow Thomas during his lifetime (rec. doc. 1).[2] Specifically, on or about May 26, 2000, American Heritage issued annuity policy AHL200826 to Thomas, with a death benefit of $99,200.58[3]; on or about April 17, 2000, Allstate issued annuity policy GA0081035 to

---

[1] Allstate Life Insurance Company is formerly known as Glenbrook Life & Annuity Company (rec. doc. 1).

[2] Allstate Life Insurance Company, Lincoln Benefit Life Company, and American Heritage Life Insurance Company, are affiliated companies of Allstate Insurance Company, who is the actual client reflected on the attorney fee bills submitted in connection with this motion (rec. doc. 35-2).

[3] With respect to annuity number AHL200826, Thomas was originally designated as the owner and beneficiary and Clarence Halpin was designated as the annuitant, but it was later amended to designate Woodrow Thomas and Rosa Thomas as the annuitants (rec. doc. 1).

```
Financial
```

Thomas, with a death benefit of $191,992.14[4]; on or about May 23, 2007, Lincoln issued annuity policy LBC0031465 to Thomas, with a death benefit of $136,610.86[5]; and on or about October 8, 2007, Lincoln issued annuity policy LBC0031563 to Thomas, with a death benefit of $246,170.00[6].[7] During the terms of policy numbers AHL200826, GA0081035, and LBC0031563, Thomas and/or Clarence R. Halpin, through a power of attorney, made several changes to the designated beneficiaries, including removing certain designated beneficiaries and changing the percentages of certain designated beneficiaries (rec. doc. 1, Exhibits A-C). On or about March 29, 2009, Thomas died. Id.

On April 23, 2009, Insurers all received written notice from several of the named beneficiaries on the various policies that they questioned the validity of the power of attorney executed by Thomas in favor of Halpin, that they disputed the beneficiary designations and changes to such designations, and that they requested that the Insurers hold all funds from distribution or place the funds from the annuity policies into the registry of the court pending litigation regarding the alleged illegal transactions with Thomas' estate. Id. Between April 2009 and February 2010, Insurers received numerous competing claims for the proceeds for each of the annuity policies numbered LBC0031563, AHL200826, GA0081035, and LBC0031465 (rec. doc. 1). Because of the conflicting claims for the proceeds of the various annuity policies and the alleged invalidity of the power of attorney

---

[4] Annuity policy number GA0081035 had four named beneficiaries, designated to receive 25% each.

[5] Rosa Thomas was designated as the 100% beneficiary of annuity policy number LBC0031465.

[6] Annuity policy number LBC0031563 had thirteen beneficiaries, all receiving various percentages (rec. doc. 1).

[7] The death benefit associated with each annuity policy is reflected through the date the complaint in interpleader was filed on December 8, 2010.

execute by Thomas in favor of Halpin, Insurers were in doubt as to which claimant was entitled to receive the death benefits for each annuity policy; therefore, Insurers instituted an interpleader action in this court. Plaintiff Insurers named all fourteen potential claimants as defendants to the interpleader action and deposited $673,973.57, the amount due under the four annuity policies, plus interest, into the registry of the court (rec. docs. 1 and 7). Upon depositing the proceeds into the registry of the court, Insurers were discharged from all liability to defendants (rec. doc. 7).

Plaintiff Insurers now seek reimbursement of their attorney's fees and costs incurred in connection with filing the interpleader action.[8] The motion for attorney's fees and costs is opposed and is now before the court.

**Discussion**

The parties agree that the court has the authority to reimburse plaintiffs for their costs, including reasonable attorney's fees, incurred in this interpleader action. *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359, 3364 (5th Cir. 1983)(rec. docs. 35-1 and 37). Awarding costs is a matter of judicial discretion. *Phillips Petroleum Co. V. Hazle wood,* 534 F.2d 61, 63 (5th Cir. 1976). The following factors are relevant to determining whether to award costs to an interpleader-plaintiff: (1) whether the case is simple; (2) whether the interpleader-plaintiff performed any unique services for the claimants or the court; (3) whether the interpleader-plaintiff acted in good faith and with diligence; (4) whether the services rendered benefitted the interpleader-plaintiff; and (5) whether the claimants

---

[8] Plaintiffs' first motion for attorney's fees and costs was denied, without prejudice to being reurged, because plaintiffs failed to attach a contemporaneous time report reflecting the date, time involved, and nature of the services performed (rec. doc. 33).

improperly protracted the proceedings. *Royal Indem. Co. v. Bates*, 307 Fed. Appx. 801 (5th cir. 2009), citing 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1719 (3d ed.2001).

Defendants, however, argue that plaintiffs' fees are "unreasonable" and should be reduced based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), which are as follows: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and the ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the profession relationship with the client, and (12) awards in similar cases. Id. Defendants argue that there was nothing novel or difficult about this case and that it was likely similar to other interpleader actions filed by plaintiffs; therefore, it did not require specialized knowledge of plaintiffs' counsel, impose time restrictions, or require expedited services. Defendants request that the fees be "reduced to reflect a more accurate and reasonable amount of fees for the work required in this interpleader action" (rec. doc. 37).

Plaintiffs seek reimbursement of $7,453.50 in attorney's fees and $389.79 in costs and offer their detailed attorney fee bills in this matter from October 7, 2010, when the matter was received and plaintiffs' counsel had their first communication about the issues in this matter with the Plaintiff Insurers, to December 29, 2010, when the funds were deposited into the registry of the court (rec. doc. 35, Exhibit 2). The fee bills reflect that the

legal work on this file was performed by a partner at $240-$300/hour, one associate at $200/hour, and two paralegals at $115 and $125/hour, with the associate and the paralegals performing most of the work in this matter. In fact, the fee bills indicate that the partner on this file billed less than 1 hour of time on this file (rec. doc. 35, Exhibit 2).

Although it is likely that this is not the first interpleader action handled by plaintiffs' counsel, as suggested by defendants, not all interpleader actions are the same, and the facts surrounding this particular interpleader indicate that it required more attention from counsel than a routine or "simple" interpleader action. As represented by plaintiffs' counsel and as reflected by the attorney fee bills, plaintiffs' counsel had to review and redact four annuity policies, each with multiple designated beneficiaries and numerous beneficiary changes, and claims filed by ten different parties challenging various aspects of the beneficiary designations in preparing the complaint (rec. doc. 35). Additionally, based on the named beneficiaries, there are fourteen claimants to the annuity proceeds, all of whom are spread across three different states, which added to the complexity of certain aspects of this case, including service of the complaint. Id. The fee bills indicate that plaintiffs' counsel not only filed the complaint in interpleader, but that they also addressed various issues surrounding service of the complaint on fourteen defendants, and drafted and filed the motion to deposit the funds into the registry of the court. Id.

Based on the undisputed facts of this matter and a review of the attorney fee bills, it appears that plaintiffs' counsel acted in good faith and with diligence and rendered services that benefitted the plaintiff insurers. Plaintiffs' counsel did not unnecessarily delay these proceedings. The fees charged by the attorneys and paralegals in this matter were reasonable and customary and not excessive. The fees sought are properly supported by

the facts and the fee bills and are not excessive, duplicative, or inadequately documented and, therefore, do not require reduction, as suggested by defendants. Accordingly,

**IT IS ORDERED** that plaintiffs' motion for attorney's fees and costs (rec. doc. 35) is **GRANTED**, and plaintiffs are awarded $7,843.29 in attorney's fees and costs in this matter to be paid from the funds deposited into the registry of the court in this matter.

Signed in Baton Rouge, Louisiana, on June 2, 2011.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**